UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION NO. 12-0258** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **DONNA JEAN REMIDES** | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

Pending before the Court is a Motion to Terminate Restitution [Doc. No. 155] filed by Defendant Donna Jean Remides ("Remides"). The Government opposes her motion. [Doc. No. 157].

For the following reasons, the motion is DENIED.

**I.     FACTUAL AND PROCEDRUAL BACKGROUND**

Remides was employed by the US Department of Agriculture as a project coordinator at the Natural Resources Conservation Service ("NRCS"). She was assigned to work at the Northeast Delta Resource Conservation and Development Council ("NDRC&DC").

The NDRC&DC was a non-profit entity with its own employees and board. The NRCS handbook stipulates that project coordinators are to have no control over the finances of their councils. However, Remides had sole control over the finances.

The USDA, Office of lnspector General ("OIG") conducted a joint investigation with the Federal Bureau of Investigation ("FBI"), and it was determined that Remides had obtained six loans from Franklin State Bank ("FSB") in the name of NDRC&DC between December 8, 2005, and September 30, 2010, with NDRC&DC's knowledge or consent.

However, FSB executives became suspicious when Remides requested a loan in the name of NDRC&DC, but also requested that the funds be made payable directly to her. The investigation determined that Remides fraudulently obtained $145,555 in loans from FSB (excluding renewals). To obtain each of the loans, Remides submitted a false resolution representing that the Board had approved the loan. The loans were needed to cover the over $640,000 that Remides embezzled from NDRC&DC, beginning in 2001. Her embezzlement was achieved by either cashing or depositing NDRC&DC checks, Sam's Discover Card checks, or by charging for fuel. In total, Remides fraudulently obtained well over $700,000 from NDRC&DC.

On June 25, 2013, Remides pled guilty to Count 10 of the Superseding Indictment during the middle of her jury trial. [Doc. No. 67]. Her Pre-Sentence Investigation ("PSI") Report dated July 17, 2013, found amongst other things that NDRC&DC was owed $612,421.72. *See* [Doc. No. 86, ¶¶ 30, 85].

By the time of the sentencing hearing, NDRC&DC had disbanded because of the irreparable financial damage Remides caused. At sentencing, the Government and Remides stipulated to a reduced amount of restitution of $450,000, Remides' objections to the PSI were waived, the Court ordered her to pay the stipulated amount. [Doc. Nos. 83 & 84]. Thus, Remides was aware (or should have been aware) at the time she was sentenced and ordered to pay restitution that NDRC&DC was no longer active.

Remides did not appeal her sentence, including the order of restitution.

On July 25, 2014, she filed a Motion to Vacate, Set Aside, or Reduce Sentence under 28 U.S.C. § 2255. [Doc. No. 96]. Remides, who acted *pro se*, asserted errors of counsel, but she

failed to allege any issues regarding the payment of restitution. After briefing, the Court adopted the Report and Recommendation of the Magistrate Judge and denied and dismissed Remides' Motion. [Doc. No. 107]. The Court also found no reason to issue a certificate of appealability.

On appeal, the Fifth Circuit also denied a certificate of appealability, so the appeal was dismissed. [Doc. No. 118].

During her term of supervised release, Remides has opposed garnishments and provided fraudulent receipts as purported proof of her restitution repayments. *See e.g.*, [Doc. Nos. 117, 122]. Ultimately, on August 22, 2019, Remides' Supervised Release was revoked by the Court because of her on-going efforts to avoid making restitution payments. [Doc. No. 147]. She was sentenced to a six-month term of imprisonment with no supervision to follow.

Remides now moves the Court to terminate her restitution.

## II. LAW AND ANALYSIS

"The primary goal of restitution is remedial or compensatory, . . . but it also serves punitive purposes[.]" *Paroline v. United States*, 572 U.S. 434, 456 (2014) (citing *Pasquantino v. United States*, 544 U.S. 349, 365 (2005) ("The purpose of awarding restitution" under 18 U.S.C. § 3663A "is . . . to mete out appropriate criminal punishment")) (other citations omitted). Therefore, even if there is no one to receive the restitution payments, a defendant may still be required to make payments as part of her punishment. *See, e.g., United States v. Ridgeway*, 489 F.3d 732, 737 (5th Cir.2007) ("[T]he Government's penal objectives in imposing and collecting restitution cannot be waived by the victim."); *cf. United States v. Coleman*, 997 F.2d 1101, 1107 (5th Cir. 1993) (vacating a restitution order a criminal case "that contradict[ed] a carefully

3

negotiated settlement agreement" between the Government and the same defendants in a parallel civil matter).[1]

Restitution payments (and the right to receive them for the term of liability) are an asset of the victim, even after an individual victim has died or a business victim is defunct. If the business was dissolved, the corporate shareholders, LLC members or LP/LLP partners may be entitled to a distribution from its assets. *See, e.g., United States v. Ritchie*, 858 F.3d 201, 212 (4th Cir. 2016), and *United States v. Wallace*, 451 Fed. Appx. 523, 525 (6th Cir. 2011).

There is also the possibility that the restitution payments could be re-directed or transferred to the Crime Victims Fund ("Fund") because of the victim's defunct status. The restitution in this matter was imposed pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A. The restitution order is enforced in accordance with 18 U.S.C. § 3664. Notably, § 3664(g)(1) provides that "no victim shall be required to participate in any phase of a restitution order," and § 3664(g)(2) provides that "[a] victim may at any time assign the victim's interest in restitution payments to the Crime Victims Fund without in any way impairing the obligation of the defendant to make such payments." If there are truly no successor-in-interest, or if the principals of the victim business cannot be located or identified, persuasive case law suggests that the proper remedy is to transfer restitution payments to the Crime Victim's Fund. *See, e.g., Untied States v. Hankins*, 858 F.3d 1273 (9th Cir. 2017), and *United States v. Hamburger*, 414 F. Supp. 2d 219 (E.D.N.Y. 2006) (victim's renunciation of right to receive restitution did not relieve defendant of his restitution obligation; rather, payments redirected to other victims who suffered losses, and, when all remaining victims were fully compensated, remaining payments to Crime Victims Compensation Fund. 18 U.S.C.A. §§

---

[1]There is no settlement in this case.

4

3664, 3663A). *But cf. United States v. Pawlinski*, 374 F.3d 536 (7th Cir. 2004) (unclaimed restitution cannot be transferred to the Crime Victims Fund because it was not a victim or victim representative).

Under the particular facts of this case, the Court finds that terminating Remides's restitution obligation would, in effect, reward her criminal behavior by allowing her to escape financial responsibility.

### III. CONCLUSION

For the foregoing reasons, Remides' Motion to Terminate Restitution [Doc. No. 155] is DENIED.

MONROE, LOUISIANA, this 10th day of June, 2020

                                                    TERRY A. DOUGHTY
                                                  UNITED STATES DISTRICT JUDGE